## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ERIN SWEENEY, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| POST CONSUMER BRANDS, LLC, |  |
| Defendant. |  |

Plaintiff Erin Sweeney ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action upon information and belief based on investigation of counsel, except for those allegations pertaining to Plaintiff which are based on her personal knowledge and her own acts and observations.

### NATURE OF THE ACTION

1.      "Informed consumers are essential to the fair and efficient functioning of a free market economy. Packages . . . should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 15 U.S.C.A. § 1451.

2.      The facts of this case are straightforward: Post Consumer Brands, LLC ("Defendant") makes prominent statements on the front label of its Fruity Pebbles cereal, Net Wt. 19.5 oz (the "Products"), which are false and misleading.

3.      In a large green banner on the front of the box, Defendant prominently represents that the Products are a "Family Size" box of cereal (the "Family Size Representation").  This Family Size Representation is reinforced by the serving size information on the back label, which states that the Products contain approximately 15 servings (the "Serving Representation").

4.      According to independent scientific testing commissioned by Plaintiff's counsel, the

Serving Representations are false and misleading because the Products in fact contain at most approximately only 12.2 servings, or 18.74% fewer servings than represented.

5.      Accordingly, if a consumer paid $6.00 for a unit of the Products, they were deprived of $1.12 of their purchase price based on the difference between the number of servings that were represented, and the number of servings that were received.

6.      The difference between the number of servings stated and the number of servings received also renders Defendant's prominent Family Size Representation expressly misleading.

7.      Defendant makes the Family Size Representation to facilitate a value comparison and to entice consumers to purchase the Products.

8.      Based on the Family Size Representation, Consumers who purchase the Products reasonably believe that they are purchasing Products containing substantially more servings than other breakfast cereals, which are not advertised as "Family Size" or that contain fewer than 15 servings.

9.      In reality, however, consumers who purchase the Products bearing the Family Size Representation only receive approximately 12 servings of cereal.

10.     Accordingly, consumers pay a price premium for the Products bearing the Family Size Representation based on the advertised number of additional servings and are denied the benefit of their bargain.

11.     In addition to the prominent Family Size Representation, Defendant makes misrepresentations on the front label of the Products concerning the calories, sodium, and total sugars contained in a 1-cup serving of the Products.

12.     Defendant represents that each 1-cup serving of the Products contains 140 calories, 190 mg sodium, and 12 g total sugars (the "Nutrition Information Representations").

13.     According to independent scientific testing commissioned by Plaintiff's counsel, the mass of the Products is at least 27.68% greater than stated on the Products' labels.

14.     Each 1-cup serving of the Products, therefore, contains at least 27.68% more calories, sodium, and total sugars than represented on the front label of the Products or, stated differently, each 1-cup serving of the Products contains at least 39 additional calories, 53 mg more sodium, and 2 additional grams of sugar.

15.     Defendant knows that its Products are mislabeled but has failed to remedy its misconduct.

16.     Plaintiff brings this action on behalf of herself and a class of similarly situated consumers seeking injunctive relief and damages based on the difference between the price paid for the Products as represented and the value of the Products as received, as well as statutory damages.

## JURISDICTION & VENUE

17.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

18.     This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.  This Court also has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

19.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because

Plaintiff resides in this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

**PARTIES**

*Defendant Post Consumer Brands*

20.    Defendant Post Consumer Brands is a large food manufacturer of numerous well-known cereal brands, including Fruity Pebbles.

21.    Defendant is a limited liability company organized under the laws of Delaware and maintains its principal executive offices at 20802 Kensington Blvd., Lakeville, Minnesota 55044.

22.    For purposes of diversity, Defendant's sole member is Post Holdings, Inc., a Missouri corporation headquartered in St. Louis, Missouri.

23.    Defendant manufactures, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States.  Defendant, at all times material hereto, conducted business in New York, maintained agents for the customary transaction of business in New York, and conducted substantial and not isolated business activity within this state.

24.    At all times material hereto Defendant manufactured, marketed, promoted, advertised, and sold the Products at issue in this Action. Defendant also manufactured and distributed the Products at issue in this Action for sale at retail stores and locations throughout New York, and the entire nation.

25.    The advertising and labeling for the Products purchased by Plaintiff was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising and labeling containing the misrepresentations alleged herein.

26.    The Representations described herein are designed to encourage consumers to purchase the Products and consumers, including Plaintiff and the Class, were reasonably misled.

27.     Defendant, through its extensive history as a manufacturer of these and other similar products was aware that the number of servings and nutrition values depicted on the Products' labeling was material to Plaintiff and reasonable consumers.

28.     At all times relevant herein, Defendant and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants and employees of Defendant, and each was acting within the purpose and scope of that agency and employment.

29.     In addition, in committing the wrongful acts alleged herein, Defendant planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent Representations, and Defendant participated in the making of such Representations in that it disseminated those Representations and/or caused them to be disseminated, after having actual knowledge of the untrue, misleading, deceptive, and/or fraudulent Representations depicted on the Products.

30.     Whenever reference in this Class Action Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

### *Plaintiff Erin Sweeney*

31.     Plaintiff Erin Sweeney, is an individual consumer over the age of eighteen (18), who resides in Valley Cottage, New York.

32.     Plaintiff purchased the Products from a retail store in New York State.

33.     In 2024, Plaintiff purchased the Products (Fruity Pebbles breakfast cereal (Net Wt.

19.5 Oz)) at one or more retail locations located in New York, including, but not limited to the Shop Rite store located in West Nyack, New York.

34.     The front label of the Products purchased by Plaintiff prominently states that the Products are a "Family Size" cereal.

35.     The nutrition facts panel for the Products purchased by Plaintiff specifically defines a "Serving Size" as "1 cup (36g)" and states that the cereal contained within the Products provides about 15 servings.

36.     At the time of purchase, Plaintiff relied on the Products' labeling, including the Serving Size Representations, and reasonably believed that the Products were a Family Size product containing 15 servings. In other words, Plaintiff believed that the Products contained 15 one-cup servings of cereal each weighing 36 grams.

37.     The Family Size Representation regarding the number of servings contained in the Products is a key point of competition and comparison for purchasing consumers, including Plaintiff.

38.     Despite its prominent packaging and labeling, the Products do not contain anywhere close to the 15 one-cup servings of cereal promised to consumers, thereby rendering the Serving Size Representations false, misleading and deceptive.

39.     Specifically, Plaintiff and other consumers of the Products were cheated out of about three (3) or 18.74% of the servings they paid for based on the advertising, marketing, and labeling of the Products.

40.     In addition, the front label of the Products purchased by Plaintiff prominently states that the Products contain 140 calories, 190 mg sodium, and 12 g total sugars.

41.     At the time of purchase, Plaintiff relied on the Products' labeling, including the

Nutrition Information Representations, and reasonably believed that the Products contain 140 calories, 190 mg sodium, and 12 g total sugars.

42.    At the time Plaintiff purchased the Products, Plaintiff did not know, and had no reason to know, that the Product's labels and advertising were misleading, deceptive and unlawful as set forth herein. Plaintiff would not have purchased the Products, or would have purchased them on different terms, if she had known the truth.

43.    Plaintiff suffered injury in fact and an ascertainable loss as a result of Defendant's unlawful conduct, including because the value of the Products as purchased was less than the value of the Products as represented.

44.    Plaintiff would like to purchase the Products in the future if the Products were accurately labeled.

45.    Defendant is the sole manufacturer of Fruity Pebbles cereal.

46.    If Defendant is allowed to advertise, market, and sell the misbranded and deceptively, misleadingly, and falsely labeled Product, Plaintiff and other Class Members could purchase the Product again, mistakenly believing the Product had been changed in some way such that the labeling and advertising were at that time true.

47.    Plaintiff and Class members have no way of knowing if or when Defendant will make changes to the Products and whether the Products' labeling and advertising remains false and deceptive.

48.    Plaintiff continues to suffer harm because she cannot rely on the Products' labeling, including the Representations, for their truth, and thus is unable to determine whether she can purchase the Products in the future.

49.    Unless Defendant is enjoined from failing to accurately represent the Products in the

future, Plaintiff and consumers will not be able to reasonably determine whether the false and misleading labeling has been addressed and remedied.

50.     Accordingly, Plaintiff and all other consumers purchasing the Product have been, are, and will continue to suffer a loss and be damaged by the deceptively, dishonestly, misleadingly and falsely marketed, advertised and labeled Product and are being deprived of the benefit of the bargain they reasonably anticipated from the Product's labeling, marketing and advertising. Plaintiff and the members of the putative class are also being harmed by continuing exposure to the misbranded Product being offered for sale in New York.

## **FACTUAL BACKGROUND**

### A.  **Serving Size and Nutrition Information Labeling**

#### *Defendant Determined That 1 Cup is the Serving Size*

51.     The meaning of the terms used within the Nutrition Facts Panel ("NFP") section of a food label have precisely defined meanings that must be adhered to by Defendant because the NFP exists on food labels to permit consumers to compare competing food products knowing that "serving size", "about 15 servings," and "1 Cup (36g)" have the same meaning whether printed on the on the Product or some other competing cereal.  The NFP is designed to enable reasonable consumers like Plaintiff to make side by side comparisons of competing products.  The process for determining the truthful and legally required label statement of the serving size and the related number of servings is explained by the Food and Drug Administration ("FDA") in its 2013 guidance *A Food Labeling Guide* under item L57.[1]

52.     Regulations require that "all nutrient and food component quantities shall be declared

---

[1] *See* U.S. FOOD & DRUG ADMIN., A FOOD LABELING GUIDE: GUIDANCE FOR INDUSTRY (2013), https://www.fda.gov/media/81606/download.

in relation to a serving as defined in this section."  *See* 21 C.F.R. § 101.9(b).

53.     "Serving" or "serving size" is defined as "an amount of food customarily consumed per eating occasion by persons 4 years of age or older which is expressed in a common household measure that is appropriate to the food."  *Id*. at 101.9(b)(1).

54.     The serving size is the common household measure that most closely approximates the Reference Amount Customarily Consumed ("RACC").  *See* 21 C.F.R. § 101.12(b).

55.     Regulations require the actual metric unit mass of the common household serving size to be reported parenthetically after the common household measure.  *See* 21 C.F.R. § 101.9(b)(7).

56.     Regulations also require Defendant to "round to the nearest whole number except for quantities that are less than 5 g" when reporting the metric mass of the common household measure selected. *Id*. at 101.9(b)(7)(ii).  "The gram (mL) quantity between 2 and 5 g (mL) should be rounded to the nearest 0.5 g (mL) and the g(mL) quantity less than 2 g (mL) should be expressed in 0.1-g (mL) increments."  *Id*. at 101.9(b)(7)(ii).

57.     Determination of the number of servings per container shall be based on the serving size of the product."  *Id*. at 21 C.F.R. §101.9(b)(8).  "The number of servings shall be rounded to the nearest whole number except for the number of servings between 2 and 5 servings and random weight products" with the use of the term "about" indicating rounding.  *Id*. at 21 C.F.R. §101.9(b)(8)(i).

### *Nutrition Facts Are Calculated Based on the Metric Mass of a Serving*

58.     "For nondiscrete bulk products (e.g., breakfast cereal, flour, sugar, dry mixes, concentrates, pancake mixes, macaroni and cheese kits) . . . the *serving size* shall be the amount in household measure that *most closely approximates the reference amount* for the product category" (21 C.F.R. §101.9(b)(2)(iii), *emphasis* added).

59.    The nutrition information is calculated using the metric mass of a serving:

"The RACC for my product is 50 g; however, a single serving of my product actually weighs 54 g because 54 g is the weight of the 1-cup household measure most closely approximating the RACC. How should the serving size be declared? Is the nutrition information based on the 50-g RACC, or the 1-cup serving size (weighing 54 g)?"

"The serving size and the nutrition information on the label are based on the household unit closest to the RACC (i.e., 1 cup). The RACC is used as the starting point to determine the serving size for the foods in each product category (*see* 21 CFR 101.9(b)(2)), but *the actual amount of the product per serving (i.e., 54 g) is used to calculate the nutrient amounts for the nutrition information in the Nutrition Facts label.*" (*emphasis* added).[2]

## B. **Defendant's Products are Mislabeled**

60.    The labeling of Defendant's Products is uniform and consistent.

61.    The Products' labeling is depicted below:



---

[2] *See* fda.gov, Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumed At One Eating Occasion, Reference Amounts Customarily Consumed, Serving Size-Related Issues, DualColumn Labeling, and Miscellaneous Topics: Guidance for Industry.



62.    Based on Defendant's Serving Representations, reasonable consumers believe that the Products contain about 15 servings.

63.    Contrary to the Serving Representations, however, the Products contain nowhere near enough cereal to make the represented number of servings of cereal when following the serving size of 1-cup (36g) as stated on the label of the Products.

64.    In addition, based on the Nutrition Information Representations, reasonable consumers believe that the Products contain 140 calories, 190 mg sodium, and 12 g total sugars.

65.    Contrary to the Nutrition Information Representations, however, the Products contain at least 27.68% more calories, sodium, and sugars than represented.

***Independent Laboratory Testing Performed in July 2022 Confirms the Serving Size Shortage and Nutrition Information Misrepresentations***

66.    In July of 2022, an independent laboratory, following FDA recommended protocols, conducted testing to determine the net product mass, serving size mass, and total number of servings for Fruity Pebbles Cereal (19.5 oz).

67.    The laboratory conducted 20 repetitions of scientific testing for each measure of the tested products and prepared a statistical analysis which accounted for the mean, median, standard deviation, and range.

68.    Based on this expert testing and analysis, the laboratory determined that (i) Defendant's Products contain fewer servings than represented on the label, and (ii) the mass of each serving is understated.

69.    On average, the results of the analysis performed in this study indicated the Products

had a total mass of 651.06 ± 0.05 g (1.43 lb), net mass of 557.79 ± 0.07 g (1.23 lb), a total of <u>11.35</u> <u>± 0.15 1-cup servings per container</u>, and a serving size (1-cup) mass of 49.14 ± 0.65 g.

70.    On average, the net mass determined in this study exceeded the claimed net mass (552 g, 1.22 lb) by 5.78 ± 0.07 g (0.013 lb), equivalent to a 1.05% difference from the claimed net mass.

71.    <u>On average, the servings per container were less than the label claim value by 3.65</u> <u>± 0.15 cups or 24.31% less.</u>

72.    On average, the serving size mass estimated in this study was 13.14 ± 0.65 g more than the label claim value (36.50% more).

73.    In other words, the laboratory precisely determined that the mass of a 1-cup serving of the Products is 36.50% greater than stated on the label and there are 3.65, or 24.31%, fewer servings than stated on the label.

74.    In contrast to the above laboratory results, which found the Serving Representations for Defendant's Products to be grossly understated, testing by the same laboratory using the same methodology found that the serving representations for a competitor product were effectively correct.

75.    In addition, because the metric mass of a serving of the Products is understated by 36.50%, the Nutrition Information Representations are false and misleading, as follows:

|  | LISTED AMOUNT | DEFICIENCY IN LISTED AMOUNT | ACTUAL AMOUNT |
|---|---|---|---|
| SERVINGS | 15 | 3.7 servings | 11.3 servings |
| CALORIES | 140 | 51 calories | 191 calories |
| SODIUM | 190 mg | 69 mg | 259 mg sodium |
| TOTAL SUGAR | 12 g | 4 g sugars | 16 g sugars |

***Independent Laboratory Testing Performed in September 2025 Confirms the Serving Size Shortage and Nutrition Information Misrepresentations***

76.    In September of 2025, the same independent laboratory, following the same FDA recommended protocols, conducted testing to determine the net product mass, serving size mass, and total number of servings for Fruity Pebbles Cereal (19.5 oz) and using a composite sample made from 12 separate lots of the Product.

77.    Once again, the laboratory conducted 20 repetitions of scientific testing for each measure of the tested products and prepared a statistical analysis which accounted for the mean, median, standard deviation, and range.

78.    Based on this expert testing and analysis, the laboratory determined that (i) Defendant's Products contain fewer servings than represented on the label, and (ii) the mass of each serving is understated.

79.    On average, the Post Family Size Fruity Pebbles had a net mass of $560.19 \pm 7.86$ g, a total of $12.19 \pm 0.13$ 1-cup servings per container, and a serving size (1-cup) mass of $45.96 \pm 0.49$g.

80.    On average, the net mass determined in this study exceeded the claimed net mass (552 g) by 8.19 g, equivalent to a 1.48% difference from the claimed net mass.

81.    On average, the servings per container were less than the label claim value by 2.81 cups or 18.74% less.

82.    On average, the serving size mass estimated in this study was 9.96 g more than the label claim value (27.68% more).

83.    In other words, the laboratory precisely determined that the mass of a 1-cup serving of the Products is 27.68% greater than stated on the label and there are 2.81, or 18.74%, fewer servings than stated on the label.

84.     In contrast to the above laboratory results, which found the Serving Representations for Defendant's Products to be grossly understated, testing by the same laboratory using the same methodology found that the serving representations for a competitor product were effectively correct.

85.     In addition, because the metric mass of a serving of the Products is understated by 27.68%, the Nutrition Information Representations are false and misleading, as follows:

| | LISTED AMOUNT | DEFICIENCY IN LISTED AMOUNT | ACTUAL AMOUNT |
|---|---|---|---|
| SERVINGS | 15 | 2.8 servings | 12.2 servings |
| CALORIES | 140 | 39 calories | 179 calories |
| SODIUM | 190 mg | 53 mg | 243 mg sodium |
| TOTAL SUGAR | 12 g | 2 g sugars | 15 g sugars |

86.     The 2022 and 2025 Testing confirms that the Products systematically contained at least 18.74% fewer servings and 27.68% more calories, sodium, and sugars than promised.

87.     The Family Size, Serving Size, and Nutrition Information Representations (collectively, the "Representations") are material to Plaintiff and reasonable consumers, who are misled and deceived.

88.     Studies have found that 79% of adults reported using Nutrition Facts labels sometimes, most of the time, or always (i.e., they regularly used it) when buying packaged food products.[3]  Specifically, more than 62% of adults regularly use serving size information on food labels and more than 64% regularly use number of servings on food labels.[4]  Clearly, reasonable

---

[3] Restrepo, B. J., *Who Regularly Uses the Nutrition Facts Label? Exploring Demographic, Socioeconomic, and Geographic Differences* (Report No. ERR-345), U.S. Department of Agriculture, Economic Research Service, at iii.
[4] *Id.* at 7.

consumers review NFPs and expect the information provided in it to be accurate as NFPs exist on food labels to enable reasonable consumers like Plaintiff and the Class to make side by side comparisons of competing products.

89.    Defendant intentionally and/or wantonly omits the true information concerning the number of servings and actual nutritional values of the Products from the Product labels (the "omissions").

### *Plaintiff and Reasonable Consumers are Misled and Deceived*

90.    The advertising and labeling for Defendant's Products purchased by Plaintiff was prepared and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through advertising and labeling containing the misrepresentations alleged herein.

91.    Consumers relied on the label Representations in purchasing the Products.

92.    Consumers lack the meaningful ability to test or independently ascertain or verify a product's label representations, especially at the point of sale, and discovering the number of servings or actual nutrition values requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

93.    Defendant's deceptive Representations are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

94.    Plaintiff and the Class members reasonably relied on Defendant's false and misleading Representations and omissions to their detriment.

95.    Defendant's false, misleading and deceptive Representations and omissions are likely to deceive and continue to deceive and mislead reasonable consumers and the general public.

96.    In making the false, misleading and deceptive Representations and omissions

described herein, Defendant knew and intended that consumers would pay more for the Products.

97.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive Representations and omissions, Defendant injured Plaintiff and the Class members in that they:

    a.    Paid a sum of money for a Product that was not what Defendant represented;

    b.    Paid a premium price for a Product that was not what Defendant represented;

    c.    Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

98.    Had Defendant not made the false, misleading, and deceptive Representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased.

99.    Plaintiff and the Class members paid for Products that were advertised as a "Family Size" cereal containing about 15 servings per container, but received Products that only had, at most, about 12 servings per container.  The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

100.    In addition, Plaintiff and the Class members paid for Products that were advertised as containing 140 calories, 190 mg sodium, and 12 g total sugars, but received Products that in fact had, at least, 179 calories, 243 mg sodium, and 15 g total sugars.  The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

101.    Based on Defendant's misleading and deceptive Representations and omissions, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products.

102.    Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

103.    Accordingly, Plaintiff brings this action on behalf of herself and all others similarly situated to recover damages for Defendant's false, deceptive, and misleading conduct.  As set forth below, Plaintiff seeks certification of a Nationwide Class and a New York Class.  Plaintiff seeks damages, reasonable attorneys' fees and costs, and disgorgement of all benefits Defendant has enjoyed from its unlawful and deceptive business practices, as detailed herein.

## CLASS ACTION ALLEGATIONS

104.    Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Fed R. Civ. P. 23(a), (b)(1), and (b)(3). Specifically, the Class is defined as:

>All persons, who, within the four years preceding the filing of the original Complaint ("Class Period"), purchased one of more boxes of the Products within the State of New York for personal, family or household purposes, and not for resale.

105.    Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

106.    Plaintiff reserves the right to amend or otherwise alter the above class definition presented to the Court at the appropriate time, or to add or eliminate classes and subclasses as

appropriate, in response to facts learned through investigation, discovery, and the specific theories of liability, or otherwise.

107.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

108.    **Numerosity:**  The precise number of members of the Class is unknown to Plaintiff, but it is clear the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive distribution and sales network throughout New York, and the entire United States.  However, members of the Class and their identities may be determined through discovery.

109.    **Commonality and Predominance:**  This Action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. All members of the Class were exposed to the deceptive practices of Defendant, as alleged herein. Included within the common questions of law or fact are:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements to the Class and the public concerning the servings in its Products;

d.    Whether Defendant's false and misleading statements concerning its Products was likely to deceive the public;

e.    Whether Defendant violated New York General Business Law §§ 349 and 350;

f.    Whether Defendant committed a breach of express warranty;

g.    Whether Plaintiff and the Class members are entitled to equitable and/or injunctive relief;

h.    Whether Plaintiff and the Class members have sustained damage as a result of Defendant's unlawful conduct;

i.    The proper measure of damages sustained by Plaintiff and Class members; and

j.    Whether Defendant was unjustly enriched by its deceptive practices.

110.    **Typicality:**  Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class members sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Member's claims arise from the same practices and course of conduct and are based on the same legal theories.  Further, there are no defenses available to Defendant that are unique to Plaintiff's claims.

111.    **Adequacy:**  Plaintiff is an adequate representative of the members of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent.  Plaintiff has retained counsel competent and experienced in the prosecution of complex class action litigation, including complex questions that arise in consumer protection litigation. Plaintiff and her counsel will prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.  Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

112.    **Superiority:**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff

and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

113. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class's claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

114. **<u>Declaratory and Injunctive Relief</u>:** Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here Defendant has engaged in conduct that has misled consumers about the number of servings in its Products and the nutrition facts values. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if the label was changed to reflect an accurate number of servings.

115. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy as above stated.

## CAUSES OF ACTION

### COUNT I
### Violation of New York G.B.L. § 349 *et seq.*
### (On Behalf of Plaintiff and the Class)

116.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

117.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

118.    This claim is brought pursuant to the laws of the State of New York.

119.    Plaintiff and Class members are "persons" within the meaning of the GBL § 349(h).

120.    Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

121.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

122.    Defendant made false and misleading statements by marketing the Products as containing a "Family Size" amount of 15 servings when the Products in fact contain, at most, 12.2 servings, or 18.74% fewer servings than advertised.

123.    In addition, Defendant made false and misleading statements by marketing the Products as containing the amount of calories, sodium, and sugars advertised by the Nutrition Information Representations, when the Products in fact contain at least 27.68% more calories, sodium, and sugar.

124.    In doing so, Defendants engaged in deceptive acts or practices in violation of GBL § 349.

125.    Information as to the true number of servings and nutrition values of the Products was in Defendant's exclusive control.  Plaintiff could not possibly have known that the Products at issue were not being sold as advertised, as such information was not available to, nor readily ascertainable by, the public.

126.    Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products in fact contain a "Family Size" number of 15 servings and the stated nutrition values.

127.    Defendant's deceptive acts and practices were directed at consumers.

128.    Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts and practices that have the capacity to deceive consumers and are harmful to the public at large.  Defendant's conduct is misleading in a material way because they fundamentally misrepresent the number of servings the Products contain.

129.    Plaintiff and Class members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein.  As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (containing 15 servings and fewer calories, sodium, and sugars) and the Products as actually sold (containing, at most, only 12.2 servings and at least 27.68% more calories, sodium, and sugars).

130.    On behalf of herself and other members of the Class, Plaintiff seeks to enjoin

Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
### Violation of New York G.B.L. § 350
### (On Behalf of Plaintiff and the Class)

131.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

132.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

133.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

134.    New York General Business Law Section 350-a(1) defines false advertising as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

135.    Defendant's labeling and advertisement of the Products was false and misleading in a material way.  Specifically, Defendant advertised the Products as containing a "Family Size" number of 15 servings when in fact the Products contain, at most, only 12.2 servings, or 18.74% fewer servings than advertised.  Defendant also advertised the Products as containing at least 27.68% less calories, sodium, and sugars than they in fact contain.

136.    Plaintiff understood Defendant's misrepresentations to mean that the Products in fact contained 15 "Family Size" servings, as reasonable consumers understand the term, and the stated number of calories, amount of sodium, and total sugars.

137.    Defendant's misrepresentations are consumer-oriented and were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

138.    Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

139.    As a result of the misrepresentations, Plaintiff and Class members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

140.    By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and Class members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

### COUNT III
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Class)**

141.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

142.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

143.    Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contained a Family Size number of 15 servings of cereal, and that they contain the stated nutrition values.

144.    Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Class.

145.    However, the Products do not conform to Defendant's representations and warranties because the Products contain, at most, only 12.2 servings, or 18.74% fewer servings than promised, and contain at least 27.68% more calories, sodium, and sugars than stated.  By falsely representing the Products in this way, Defendant breached express warranties.

146.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Class have been injured and harmed in an amount to be proven at trial.  Had Plaintiff and members of the Class known the Products did not in fact contain 15 Family Size servings and/or the stated number of calories, sodium, and sugars, they would not have purchased the Products, or would have paid substantially less for them.

147.    Prior to filing the initial complaint in this action, Defendant was served via certified mail with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607.

**COUNT IV**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and the Class)**

148.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

149.    Plaintiff brings this claim individually and on behalf of all members of the Class against Defendant.  Upon certification, the Class will consist of more than 100 named Plaintiffs.

150.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

151.     The Products are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

152.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

153.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) and 2301(5).

154.     In connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), that the Products are Family Size Products containing 15 servings. Specifically, Defendant represented in writing that the Products contain a certain number of servings per container (15), and that the servings have a specific mass (36g).

155.     In fact, the Products, at most, only contain about 12.2 servings per container, and the mass of the Products is at least 27.68% greater than stated on the Product labels.

156.     In addition, in connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), that the Products contain specific nutrition facts values.  Specifically, Defendant represented in writing that the Products contain 140 calories, 190 mg sodium, and 12 g total sugars; when the Products actually contain at least 179 calories, 243mg sodium, and 15 g total sugars.

157.     By reason of Defendants' breach of warranty, Defendants violated the statutory rights due to Plaintiff and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.

§§ 2301 *et seg*, thereby damaging Plaintiff and Class Members.

158.    Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products or would have paid substantially less for them if they knew of Defendant's false and misleading Representations.

### COUNT V
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

159.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

160.    Defendant, through its misleading Representations and omissions, enticed Plaintiff and members of the Class to purchase the Products.

161.    Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products.

162.    By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

163.    Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

164.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its deceptive marketing and advertising practices.

165.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by Defendant due to its wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members

of the proposed class the following relief against Defendant:

(a)     For an order certifying the Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order requiring Defendant to undertake a corrective advertising campaign;

(g)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(h)     Granting such other and further relief as many be just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by

jury on all issues so triable.

Dated:   November 5, 2025                    Respectfully submitted,

KAMBERLAW, LLC

By: _/s/ Frederick J. Klorczyk III_____
Frederick J. Klorczyk III
305 Broadway, Suite 713
New York, NY 10007
Tel: 646.964.9604
Fax: 212.202.6364
Email: fklorczyk@kamberlaw.com

KAMBERLAW, LLP
Naomi B. Spector (*pro hac vice* forthcoming)
3451 Via Montebello, Suite 192-212
Carlsbad, CA 92009

Tel: 310.400.1053
Fax: 212.202.6364
Email: nspector@kamberlaw.com